### JIMMIE COLLINS v. THE STATE.

No. 2761.  Decided April 13, 1904.

**Charge of the Court—Assault With Intent to Murder.**

Where the evidence shows that the deceased struck appellant with his fist about the head and the cutting by defendant was done in defense of such attack, the offense would not exceed that of aggravated assault, and if the knife used was not a deadly weapon by the manner and means of its use, the offense would only be a simple assault, and it was error to limit the law to an attack which would involve danger of death or serious bodily injury.

Appeal from the District Court of Chambers.  Tried below before Hon. L. B. Hightower.

Appeal from a conviction of assault with intent to murder; penalty, two years imprisonment in the penitentiary.

The facts are sufficiently stated in the opinion.

*Stevens & Pickett* and *E. T. Branch,* for appellant.—The court failed to instruct the jury in any part of his charge as to appellant's rights if the assault by the injured party was of a less character than one that put appellant in fear of death or seriously bodily injury.  The charge was too restrictive in this respect.  Crawford v. State, 70 S. W. Rep., 548; Price v. State, 10 Texas Ct. Rep., 28, 29.

*Howard Martin,* Assistant Attorney-General, for the State.

DAVIDSON, PRESIDING JUDGE.—This conviction was for assault with intent to murder.  The evidence discloses while a dance was in progress on the night of the difficulty, and while the parties were promenading, appellant Collins "blockaded the promenade."  The assaulted party asked appellant why he did not promenade.  He replied he did not have to; that he would promenade when he got ready.  The brother of appellant walked over towards the alleged injured party, and said, "What is that about promenading?  If you want to fight I brought that game to Texas."  Appellant's brother was then going in the direction of Jackson, the assaulted party.  Jackson drew his pistol and fired several shots at the brother of appellant, hitting him in the leg and foot and shooting a hole in his hat.  This brought on a general trouble, which ended in the separation of the parties.  At the termination of this branch of the difficulty, Jackson was rushed off into a corner, where he was held.  Appellant returned from the gallery, where he had gone.  As

he entered the room the difficulty was renewed between himself and Jackson. The State's theory of this transaction was that the half brother of appellant was holding Jackson when appellant approached and cut him several times with a small pocket knife about the head, face, neck and arm. The wounds seemed to be slight, the deepest one being on the fleshy part of the arm, where the knife entered about an inch. This is the State's version of this case. We deem it unnecessary to go into appellant's version of the first difficulty. His theory of the latter trouble is about as follows: At the cessation of the first difficulty he went out on the gallery. After the shooting was over he returned into the room after his hat; and when he re-entered the room, Jackson's two sisters were holding him (Jackson) in the southeast corner of the room, and Jackson said to his sisters, "Give me my gun; there is another one of those Collins sons of bitches, and I will kill them all." Appellant replied, "You all hold him; I am not after him; I want my hat to take my brother home." Jackson pulled away from his sisters and struck appellant, whereupon appellant cut him. Jackson then picked up a chair and started toward appellant. Somebody pulled the chair away. Jackson struck appellant, and appellant again cut him. Appellant's contention further is that Jackson undertook to strike him with the chair, and would have succeeded had it not been grabbed and taken out of his hands. Jackson then went to him and began striking him, and it was while he was being struck that he cut Jackson; that he pulled his knife after Jackson struck him. Jackson struck him "about the head, face, on the nose, mouth and all over the face." This is a sufficient statement of the evidence to dispose of the questions. The court charged the jury on assault to murder, aggravated assault, manslaughter and also charged on the perfect right of self-defense. Exception was reserved to the charge on manslaughter and aggravated assault, because it did not sufficiently present these matters under the facts. We believe the exception is well taken. The charge on assault, drawing the distinction between aggravated assault and assault to murder, is not sufficiently definite to present the actual case made by the facts. Limiting the matter the court should have further told the jury that if Jackson was striking appellant with his fists about the head or face and the cutting was done in defense of this attack that the offense would not be of greater magnitude than aggravated assault; and if the weapon was not a deadly weapon by the manner and means of its use then the offense would not be of higher magnitude than simple assault. The court limited this phase of the law to an attack which would lead appellant to believe that he was in danger of death or serious bodily injury. The contention of appellant is emphasized as we understand the facts, from the absolute want of testimony showing the weapon was a dangerous one, and that the injury inflicted was of a serious character. The phase of the law above indicated will be given upon another trial, in connection with the question of the degree of the assault. Crawford v.

State, 70 S. W. Rep., 548; Price v. State, 10 Texas Ct. Rep., 28. The judgment is reversed and the cause remanded.

*Reversed and remanded.*